

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

Signed September 7, 2016

*Barbara J. Houser*

**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO.  14-32939-BJH |
| LLOYD EUGENE WARD, | § | (Chapter 7) |
| | § | |
| DEBTOR. | § | |
| | § | |
| _____ | § | |
| | § | |
| ROBERT YAQUINTO, TRUSTEE, | § | ADV. PROC. NO.  15-3037-BJH |
| | § | |
| PLAINTIFF, | § | Related to ECF No. 141 |
| v. | § | |
| | § | |
| AMANDA WARD, GLENN PROPERTIES | § | |
| CORP. a/k/a GLENN PROPERTIES INC., | § | |
| BEST ACCOUNT RECEIVABLES | § | |
| MANAGEMENT SOLUTIONS, LLC, and | § | |
| LLOYD WARD, | § | |
| | § | |
| DEFENDANTS. | § | |

## MEMORANDUM OPINION AND ORDER
## <u>GRANTING MOTION FOR SUMMARY JUDGMENT</u>

Before the Court are the Motion for Summary Judgment [AP No. 141][1] and brief in support [AP No. 142] (the "**Motion for Summary Judgment**") filed by defendants Amanda Ward ("**Amanda**"), Glenn Properties Corp. a/k/a Glenn Properties, Inc. ("**GPC**"), and Best Account Receivables Management Solutions, LLC ("**BRM**" and, collectively with Amanda and GPC, the "**Movants**"), the Response to Defendants' Motion for Summary Judgment [AP No. 152] and brief in support [AP No. 153] ("**Plaintiff's Brief**") filed by Robert Yaquinto, Chapter 7 trustee of the bankruptcy estate of debtor-defendant Lloyd Ward ("**Lloyd**"),[2] Movants' reply and evidentiary objections [AP No. 156] ("**Movants' Evidentiary Objections**"), and Plaintiff's response to Movants' Evidentiary Objections [AP No. 159] ("**Plaintiff's Response to Movants' Evidentiary Objections**"). A hearing on the Motion for Summary Judgment was held and concluded on August 3, 2016 (the "**Hearing**"), and the Motion for Summary Judgment and the Movants' Evidentiary Objections are now ripe for ruling.

## I.     SUMMARY JUDGMENT STANDARD

In deciding a motion for summary judgment, a court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56, as made applicable by FED. R. BANKR. P. 7056. In deciding whether a fact issue has been raised, the facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). A court's role at the summary judgment stage is not to weigh the evidence or determine the truth of the matter, but rather to determine only

---

[1] Citations to the docket in this adversary proceeding will take the format "AP No. __," while citations to the docket in Lloyd's bankruptcy case will take the format "BC No. __."

[2] Lloyd, Amanda's husband, is the only defendant not a party to the Motion for Summary Judgment. Movants and Lloyd are collectively referred to as the "**Defendants**."

whether a genuine issue of material fact exists for trial. *Peel & Co., Inc. v. The Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001) ("the court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence") (citing *Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 135 (2000)); *see also U.S. v. An Article of Food Consisting of 345/50 Pound Bags*, 622 F.2d 768, 773 (5th Cir. 1980) (the court "should not proceed to assess the probative value of any of the evidence...."). While courts must consider the evidence with all reasonable inferences in the light most favorable to the non-movant, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (citing FED. R. CIV. P. 56(e)). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Pylant v. Hartford Life and Acc. Ins. Co.,* 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

"After the movant has presented a properly supported motion for summary judgment, the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.,* 232 F.3d 473, 477 (5th Cir. 2000) (internal citation omitted). However, where "the burden at trial rests on the non-movant, the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case." *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 174 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## II.    JURISDICTION, VENUE, AND STATUTORY AND CONSTITUTIONAL AUTHORITY

Without citing any case law or other supporting authority, the Movants allege that this Court lacks "jurisdiction" over (1) defendants GPC and BRM and may not enter a final order resolving Count VIII of the Complaint, which requests substantive consolidation of these entities

into Lloyd's bankruptcy estate, and (2) non-defendants Lloyd Ward & Associates ("**LWA**"), Lloyd Ward P.C. ("**LWPC**"), and Ward Family Trust ("**WFT**") and may not enter a final order resolving any count in the Complaint in which the Plaintiff seeks a ruling that LWA, LWPC, and/or WFT are Lloyd's alter egos.[3]  For the reasons set forth below, the Court disagrees and finds that it has both jurisdiction and the statutory and constitutional authority to enter a final judgment fully resolving all counts in the Complaint.

The District Court for the Northern District of Texas has subject matter jurisdiction over the above-captioned adversary proceeding (the "**Adversary Proceeding**") under 28 U.S.C. § 1334.  Although bankruptcy courts do not have independent subject matter jurisdiction over bankruptcy cases and proceedings, 28 U.S.C. § 151 grants bankruptcy courts the power to exercise certain "authority conferred" upon the district courts by title 28.  Under 28 U.S.C. § 157, the district courts may refer bankruptcy cases and proceedings to the bankruptcy courts for either entry of a final judgment (core proceedings) or proposed findings and conclusions (noncore, related-to proceedings).  Thus, this Court exercises authority over Lloyd's underlying bankruptcy case (the "**Bankruptcy Case**") and the Adversary Proceeding pursuant to the Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc adopted in this district on August 3, 1984.

28 U.S.C. § 1334(b) lists three types of proceedings over which the District Court has jurisdiction – those "arising under title 11," those "arising in" a case under title 11, and those "related to" a case under title 11.  The classification of a proceeding under § 1334 depends on the connection of the proceeding to the underlying bankruptcy case.  "'Arising under' jurisdiction

---

[3] The parties sometime use the terms "alter ego" and "reverse piercing" interchangeably in their pleadings.  This confusion may arise because, in Texas, "it would appear that a reverse piercing case rests upon a finding that the individual (debtor) and the corporation should be treated as alter egos." *Zahra Spiritual Trust v. U.S.*, 910 F.2d 240, 244 (5th Cir. 1990).  The factors to be considered when determining alter ego and reverse piercing overlap considerably.  *Id.* at 242-243.

involves causes of action created or determined by a statutory provision of title 11." *Faulkner v. Eagle View Capital Mgt. (In re The Heritage Org., L.L.C.)*, 454 B.R. 353, 360 (Bankr. N.D. Tex. 2011) (citing *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987)). "'Arising in' jurisdiction is not based on a right expressly created by title 11, but is based on claims that have no existence outside of bankruptcy." *Faulkner*, 454 B.R. at 360 (citing *Wood*, 825 F.2d at 97). "Arising under" and "arising in" proceedings are "core" proceedings. 28 U.S.C. § 157(b); *Stern v. Marshall,* 564 U.S. 462 (2011); *U.S. Brass Corp. v. Travelers Ins. Grp., Inc. (In re U.S. Brass Corp.),* 301 F.3d 296, 304 (5th Cir. 2002).

In comparison, "related to" jurisdiction exists if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)); *see also U.S. Brass*, 301 F.3d at 304. "That state law may affect a proceeding's resolution cannot be the sole basis by which a proceeding is excluded from the otherwise large net cast by 'related to' jurisdiction." *Hartley v. Wells Fargo Bank, N.A. (In re Talsma)*, 509 B.R. 535, 542 (Bankr. N.D. Tex. 2014) (citing 28 U.S.C. § 157(b)(3)). Proceedings that involve merely "related to" jurisdiction and do not otherwise arise under the Bankruptcy Code or arise in a bankruptcy case are "non-core." *Faulkner*, 454 B.R. at 360.

A bankruptcy judge's authority in cases and proceedings differs depending on whether the subject matter is "core" or "non-core." 28 U.S.C. § 157(b)-(c). With certain limitations discussed below, a bankruptcy court may hear and enter a final order in all cases filed under title 11 and all proceedings within a bankruptcy court's "core" authority. *Id*. § 157(b)(1). Section 157 provides a nonexclusive list of such core proceedings, including as relevant here:

(2) Core proceedings include, but are not limited to--

(A) matters concerning the administration of the estate;

> \*\*\*
>
> (E) orders to turn over property of the estate; [and]

\*\*\*

> (O) other proceedings affecting…the adjustment of the debtor-creditor or the equity security holder relationship….

*Id.* § 157(b)(2)(A), (E), and (O).  In non-core proceedings, the statute limits the bankruptcy court to issuing proposed findings of fact and conclusions of law to the district court, unless the parties otherwise consent.  *Id.* § 157(c)(1).

In *Stern v. Marshall*, 564 U.S. 462 (2011), the U.S. Supreme Court held that, notwithstanding the bankruptcy court's statutory authority under 28 U.S.C. § 157(b)(2)(C) to adjudicate an estate's counterclaim against a creditor, the bankruptcy court lacked constitutional authority to enter a final judgment on a state-law counterclaim because such claim would "not [be] resolved in the process of ruling on a creditor's proof of claim."  *Id.* at 503; *see also BP RE, L.P. v. RML Waxahachie Dodge, L.L.C.*, 735 F.3d 279, 286 (5th Cir. 2013) ("Thus, 'Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.'" (quoting *Stern*, 564 U.S. at 499)).  Thus, in addition to determining whether each alleged claim is core or non-core, this Court must also determine whether the underlying issue (1) "stems from the bankruptcy itself," or (2) it "would necessarily be resolved in the claims allowance process."  *BP RE*, 735 F.3d at 286 (citation omitted); *see also Somerset Prop. SPE LLC v. LNR Partners, Inc. (In re Somerset Prop. SPE, LLC)*, 2012 WL 3877791, at \*4 (Bankr. E.D.N.C. Sept. 6, 2012) ("If either of the prongs in the *Stern* test are met, then the bankruptcy court can enter a final order or judgment.") (citing cases).

Absent both statutory and constitutional authority, this Court may not enter a final judgment, and instead must issue proposed findings of fact and conclusions of law to be considered by the District Court.[4] With this precedent in mind, the Court will return to the Movants' challenge to this Court's "jurisdiction," turning first to the Count VIII claim and then to what the Movants are concerned are alter ego claims involving LWA, LWPC, and WFT.

Count VIII of the Complaint seeks an order substantively consolidating GPC and BRM with Lloyd's bankruptcy estate. Substantive consolidation, which is an action unique to bankruptcy, is not expressly authorized by the Bankruptcy Code. Instead, the power arises from a bankruptcy court's equitable powers granted under 11 U.S.C. § 105(a),[5] which states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *See Bakst v. Smokemist, Inc. (In re Gladstone)*, 513 B.R. 149, 157 (Bankr. S.D. Fla. 2014) (citing *In re Pearlman*, 462 B.R. 849, 854 (Bankr. M.D. Fla. 2012)); *In re Permian Producers Drilling, Inc.*, 263 B.R. 510, 515 (W.D. Tex. 2000) (quoting 11 U.S.C. § 105(a)). Because substantive consolidation is a "claim" unique to bankruptcy cases, it "arises in" the Bankruptcy Case itself and is a "core" proceeding under 28 U.S.C. § 157(b)(2). *See, e.g., In re Bass*, 2011 WL 560418, at *6 (Bankr. W.D. Tex. Feb. 15, 2011) ("As a cause of action involving rights created by the federal bankruptcy code, a substantive consolidation cause of action is core."); *In re Gladstone*, 513 B.R. 149, 157 (Bankr. S.D. Fla. 2014) (the bankruptcy court has "arising in" jurisdiction over action seeking substantive consolidation of alleged alter egos into debtor's

---

[4] In *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015), the Supreme Court held that a bankruptcy court may enter a final judgment in a proceeding over which it has statutory authority but lacks constitutional authority with the parties' knowing and voluntary consent. Such consent has not been given here.

[5] The Fifth Circuit has recognized the bankruptcy courts' authority to substantively consolidate entities. *See S.I. Acquisition, Inc. v. Eastway Delivery Serv. Inc. (In re S.I. Acquisition Inc.)*, 817 F.2d 1142, 1144 n.2 (5th Cir. 1987) ("The bankruptcy court has authority to order *de facto* disregard of the corporate form through consolidation proceedings.").

bankruptcy estate). Thus, the Court concludes that it has jurisdiction, as well as statutory and constitutional authority, to enter a final judgment resolving Count VIII of the Complaint.

The Movants' allegation that this Court does not have jurisdiction to consider whether LWA, LWPC, and/or WFT are Lloyd's alter egos is simpler to dispose of because, although LWA, LWPC, and WFT appear in the fact section of the Complaint as Lloyd's alleged alter egos, they are not included within Counts I and II (the alter ego counts) or within the prayer at the conclusion of the Complaint. Because the Complaint does not request alter ego findings with respect to LWA, LWPC, and WFT, the Movants' allegation that this Court lacks jurisdiction as to them is moot.

## III. EVIDENTIARY OBJECTIONS

The Movants' Evidentiary Objections include objections to multiple portions of the Plaintiff's Appendix [ECF No. 154] submitted in opposition to the Motion for Summary Judgment. Several of the objections were addressed in the Plaintiff's Response to Movants' Evidentiary Objections, and the objections were withdrawn by Movants on the record at the Hearing. Hr'g Tr. 145:5-147:14 (Vickers). The evidentiary objections that remain are addressed below.

### 1. Lloyd's Deposition Taken November 29, 2011

The Movants object to Lloyd's deposition taken November 29, 2011 in the case of *Lloyd Ward Group, PC v. Miles*, Civ. No. 429-02652-2011, which was pending in the District Court for Collin County, Texas, 429th Judicial District (the "**Silverleaf Deposition**"[6]). Plaintiff's App. 1030-1345.[7] Although the Movants concede that the Silverleaf Deposition is admissible against Lloyd as a statement of a party-opponent, they object to the admissibility of the deposition against Amanda on the grounds that it is (1) hearsay as to Amanda, who was not a party to the state court

---

[6] The parties refer to this deposition as the Silverleaf Deposition in their papers, so the Court will refer to it in the same manner. Silverleaf Debt Solutions, LLC was a defendant in the action.

[7] At the Hearing, Movants' counsel stated the deposition was found at Plaintiff's App. 1350-1540. Hr'g Trans. 145:19-20 (Vickers). The Silverleaf Deposition, however, appears earlier in the Plaintiff's Appendix, at 1030-1345.

action, and (2) not properly authenticated.  Hr'g Trans. 146:3-9 (Vickers); Movants' Evidentiary

Objections ¶¶ 2, 3(a).  Although the Movants do not cite a statute or rule in support of their

argument, it appears that they are relying on Federal Rule of Civil Procedure 32(a)(8),[8] arguing

that the Silverleaf Deposition "involves a deposition taken in another proceeding not involving the

parties or issues herein and should be excluded under the hearsay rule."  Movants' Evidentiary

Objections ¶ 2.

As explained by Rule 56, summary judgment evidence need not be presented in an

admissible form, but must be capable of being "presented in a form that would be admissible in

evidence" at trial.  FED. R. CIV. P. 56(c)(2).  Here, Lloyd's deposition testimony can easily be

presented in a form that would be admissible in evidence by calling Lloyd to testify at trial or, if

Lloyd were not available at trial, by producing a certified copy of the transcript.  Further, numerous

courts have held that a deposition, while not meeting Rule 32's requirements, may still be

considered under Rule 56 for summary judgment purposes as if it were a sworn affidavit.  *See*

*Bingham v. Jefferson County, Tex.,* 2013 WL 1312563, at *6 n.4 (E.D. Tex. March 1, 2013) (citing

cases).[9]  In the Silverleaf Deposition, Ward gave sworn testimony on matters within his personal

---

[8] As relevant here, Rule 32(a)(8) allows depositions previously taken to be used "in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action."  FED. R. CIV. P. 32(a)(8).

[9] *See Vondriska v. Cugno*, 368 Fed. Appx. 7, 8–9 (11th Cir. 2010) (unpublished) ("The district court abused its discretion in holding that Rule 32(a) controls the admission of the testimony in these depositions. In order to support a motion for summary judgment under Rule 56(e), testimony must be sworn, competent and on personal knowledge, and set out facts that would be admissible in evidence at trial. Depositions, even those taken without notice to or the presence of the later non-moving party on summary judgment, can contain such testimony."); *Tingey v. Radionics*, 193 Fed. Appx. 747, 765–66 (10th Cir. 2006) (unpublished) (finding Rule 32 inapplicable to summary judgment and holding that a deposition from another proceeding may be considered as if it were an affidavit); *RSBI Aerospace v. Affiliated FM Ins. Co.*, 49 F.3d 399, 403 (8th Cir. 1995) ("While RSBI claims that this statement was not admissible because it did not participate in the taking of the statement, a sworn statement taken under oath is at least as reliable as an affidavit for the purposes of Rule 56(c)."); *In re Sunset Bay Assoc.*, 944 F.2d 1503, 1509–510 (9th Cir. 1991) (holding that an uncompleted and unsigned deposition can be considered for summary judgment purposes if it "is at least as reliable as an admissible affidavit"); *Hoover v. Switlik Parachute Co.*, 663 F.2d 964, 966 (9th Cir. 1981) (holding that deposition testimony that has not been subject to cross-examination by the party opposing its introduction can be considered for summary judgment purposes if it meets the requirements for an affidavit); *cf. Kelley v. Price–Macemon, Inc.*, 992 F.2d 1408, 1415 n.12 (5th Cir. 1993) ("[T]he district court, in adjudicating Industrial's motion for

---

**MEMORANDUM OPINION AND ORDER**                                                                                            **9**

knowledge.  Thus, the Court concludes that the deposition is proper summary judgment evidence under Rule 56, and the Movants' objection is overruled.[10]

## 2.     Certificate of Limited Partnership of Melissa CR 364 Limited

The Movants also object to the admissibility of the Certificate of Limited Partnership of Melissa CR 364 Ltd.  (the "**Certificate of Limited Partnership**")[11] on the basis that the document is "not sworn to or properly authenticated" and "is not certified nor signed by any Defendant, nor purports to relate to any Defendant."  Hr'g Trans. 145:10-11 (Vickers); Movants' Evidentiary Objections ¶ 3, 3(s).  The Plaintiff, however, alleges that the document is admissible because: (1) as demonstrated by the stamp on the document, it was filed with the Texas Secretary of State and is authentic under Federal Rule of Evidence 901(b)(7), (2) the document is authenticated by circumstantial evidence, citing *In re McLain*, 516 F.3d 301, 308 (5th Cir. 2008) and FED. R. EVID. 901, and (3) the document could be authenticated at trial by the individual who signed it.

 Federal Rule of Evidence 901(b)(7) states:

(a) In General.  To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

(b) Examples.  The following are examples only—not a complete list—of evidence that satisfies the requirement:

\*\*\*

(7) Evidence About Public Records.  Evidence that:

---

summary judgment, primarily relied upon the testimony offered at the prior trial. Although Rule 56 does not expressly contemplate the use of such evidence in granting summary judgment, we find no error in relying upon such evidence.").

[10] Notably, Plaintiff's counsel did not reference the Silverleaf Deposition during oral argument and the only citation to the deposition in Plaintiff's Brief is in footnote 47 in support of the allegation that a company named VL Capital, LLC is also Lloyd's alter ego and an entity he used to funnel money to himself.  Plaintiff's Brief at 11 & n.47.  Thus, exclusion of the Silverleaf Deposition would not have altered this Court's ruling on the Motion for Summary Judgment.

[11] Plaintiff's App. 426.

(A) a document was recorded or filed in a public office as authorized by law; or

(B) a purported public record or statement is from the office where the items of this king are kept.

As explained by the Fifth Circuit:

> A proponent may authenticate a document with circumstantial evidence, including the document's own distinctive characteristics and the circumstances surrounding its discovery.  This Court does not require conclusive proof of authenticity before allowing the admission of disputed evidence[,] Rule 901 does not limit the type of evidence allowed to authenticate a document. It merely requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be.  The standard for authentication is not a burdensome one.

*U.S. v. Jackson*, 636 F.3d 687, 693 (5th Cir. 2011) (internal quotations and citations omitted).

Here, the only evidence in support of the Certificate of Limited Partnership is the document itself.  A review of the Certificate of Limited Partnership shows that it contains a stamp in the upper right-hand corner that appears to indicate that the document was filed with the Texas Secretary of State; however, there is no associated filing number, and the document is not under seal, certified, or accompanied by evidence that is from a public office where such records are kept.  *See* FED. R. EVID. 902(1), (2), (4).  Moreover, the Court is unpersuaded by the Plaintiff's argument that the individual signing the Certificate of Limited Partnership would be available at trial to authenticate the document since that person is not a party to the Adversary Proceeding and there is no evidence that he is within the subpoena power of this Court.  Overall, the Plaintiff's arguments in support of admission boil down to "trust me."  And, although this Court does not doubt the integrity of the Plaintiff or his counsel, the summary judgment record does not support a finding that the document is what the Plaintiff says it is.  Because the Certificate of Limited Partnership lacks authentication, the Movants' objection is sustained.[12]

---

[12] The Court notes that consideration of the Certificate of Limited Partnership would not affect the disposition of the Motion for Summary Judgment.

### 3.      Purported Tax Returns of Lloyd-Affiliated Entities

The Movants object to certain tax returns contained in the Plaintiff's Appendix that purport to have been filed by Lloyd-affiliated entities on the ground that "they are not sworn to or properly authenticated."  Movants' Evidentiary Objections ¶ 3.  A review of these tax returns shows that each is either marked "copy" and contains no signature, or is only signed by the tax preparer with the taxpayer's signature line blank.  The Movants argue that, in either instance, the documents are inadmissible because they are not self-authenticating and there is no custodian affidavit or other evidence in the summary judgment record that would permit this Court to find that the documents are what the Plaintiff contends they are.

The Plaintiff responds that the tax returns are admissible on summary judgment because, (1) at trial, Lloyd could be called to the stand to authenticate the documents, (2) Lloyd authenticated many of the returns at a June 2016 deposition, excerpts of which are attached to the Plaintiff's Response to Movants' Evidentiary Objections as Exhibit A, and (3) Lloyd also authenticated many of the returns at a deposition held a few days before the Hearing.  The Court finds these arguments unpersuasive for several reasons, as explained below.

First, the Plaintiff argues that the unsigned tax returns, as presented in his Appendix, do not need to be admissible, they only need to be capable of being produced in an admissible form at trial.  Plaintiff's Response to Movants' Evidentiary Objections at 2-3 (citing FED. R. CIV. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.")).  Although the Court agrees with this statement, it concludes that the Plaintiff failed to meet his burden.  Notably, the returns are either unsigned or, if signed, only contain the signature of the tax preparer, and none have a custodian affidavit or other evidence in the summary judgment record authenticating them.  Despite this, the

Plaintiff argues that, at trial, he could call Lloyd to the stand to authenticate the returns.  However, there is nothing in the summary judgment record indicating that these returns are copies of returns that were actually filed with the IRS.  And, without Lloyd's signature on the returns, it is pure conjecture whether he would authenticate them at trial.  Further, the returns signed by "William Pyke CPA" as the tax return preparer are also not authenticated by the summary judgment record.  Although the Plaintiff claims that Mr. Pyke has executed a custodian affidavit authenticating those returns,[13] the alleged affidavit was not included in the summary judgment record.

As to the Plaintiff's second argument, the Court concludes that the summary judgment record does not support a finding that Lloyd previously authenticated the objected-to tax returns.  Although each document is discussed individually below, the Court will give an example for context.  The document at Plaintiff's Appendix 390-398 is purportedly the 2009 tax return for LWPC (the "**Purported Return**").  Lloyd allegedly authenticates the Purported Return in his deposition taken on June 24, 2016, excerpts of which are attached to the Plaintiff's Response to Movants' Evidentiary Objections.  As reflected on page 117 of the deposition, Lloyd was handed an exhibit marked 43 ("**Exhibit 43**"), and the following colloquy occurs:

> Q. (BY MR. BRANHAM [Plaintiff's counsel]) This is a document entitled 2009 US Income Tax Return for Lloyd Ward, PC.  Is that a true and accurate copy of the tax return filed by Lloyd Ward, PC in 2009?
>
> A. [Ward] Yes.

A copy of Exhibit 43, however, is not included with the deposition excerpts, and there is nothing on the face of the Purported Return indicating it is Exhibit 43.  The only evidence in this regard is in the Branham Declaration, where Plaintiff's counsel states that "[t]he tax returns which

---

[13] Declaration of Charles W. Branham, III Pursuant to 28 U.S.C. § 1746 [AP No. 159] (the "**Branham Declaration**") ¶ 5 ("Additionally, many of the tax returns were also produced by Mr. Ward's former CPA, Bill Pyke.  Mr. Pyke has executed a business records affidavit which authenticates these records.").

are disputed by Lloyd Ward were produced by Lloyd Ward in response to discovery in this case."
Branham Declaration ¶ 5. This, however, is insufficient to show that the Purported Return is
Exhibit 43 or was otherwise authenticated by Lloyd. Moreover, Lloyd's deposition taken a few
days before the Hearing does not resolve this issue because there is no copy of that deposition
transcript in the summary judgment record.

For these reasons, the Court concludes that the objected-to tax returns are neither self-
authenticating nor authenticated by the summary judgment record and that it must sustain the
Movants' objection to those returns (which are discussed individually, below, so that the record is
clear).[14] Possibly foreseeing this ruling, the Plaintiff requests that this Court defer ruling on the
Motion for Summary Judgment until he can obtain authenticated copies of the tax returns.
Plaintiff's Response to Movants' Evidentiary Objections at 6-7. According to the Plaintiff,
unauthenticated copies of the tax returns are included in the Appendix because Lloyd failed to
perform under an agreement to produce signed copies. To address this, the Plaintiff filed a motion
to compel; however, that motion was never prosecuted. *Id.* When asked at the Hearing why the
Plaintiff did not pursue his motion to compel, Plaintiff's counsel responded "Judge, I don't have a
good answer for that." Hr'g Tr. 147:20-21 (Branham). Further, this Adversary Proceeding has
been pending since April 2015 and discovery deadlines have been extended on multiple occasions,
yet the Plaintiff failed to timely obtain the documents. Thus, based on the Plaintiff's failure to
adequately explain why he did not seek authenticated copies of the tax returns earlier, or why he

---

[14] The only time the Plaintiff has cited the Court to any of the objected-to tax returns is in footnote 37 of the Plaintiff's Brief in support of the argument that "payments by [Lloyd] Ward or his entities to GPC do not appear on any of the Ward's [*sic*] tax returns or the returns of his entities in any form." Plaintiff's Brief at 10 & n.37. And, at the Hearing, the objected-to tax returns were only mentioned in relation to the evidentiary objection, and were not part of the Plaintiff's argument on the Motion for Summary Judgment. Thus, even if the Court were to admit the returns into the summary judgment record, they would not change this Court's analysis of, or ruling on, the Motion for Summary Judgment.

failed to prosecute his motion to compel production of those documents, the Court denies the Plaintiff's request to defer its ruling on the Motion for Summary Judgment.

Based upon the above analysis, the following is the Court's specific ruling as to each tax return at issue.

### a) 2012 Tax Return of Lloyd Group, P.C., Plaintiff's App. 373- 389

The Court sustains the Movants' objection to the purported 2012 Form 1120S and related documents of Lloyd Ward Group, P.C. The document is unsigned and marked "copy," and there is no evidence in the summary judgment record authenticating it.

### b) 2009 Tax Return of Lloyd Ward, P.C., Plaintiff's App. 390- 398

The Court sustains the Movants' objection to the purported 2009 Form 1120S and related documents of Lloyd Ward, P.C. Although the document is signed by the purported preparer, there is no custodian affidavit or other evidence in the summary judgment record authenticating it.

### c) 2010 Texas Franchise Tax Report of Lloyd Ward, P.C., Plaintiff's App. 399

The Court sustains the Movants' objection to the purported 2010 Texas Franchise Report of Lloyd Ward, P.C. The document is unsigned and marked "copy," and there is no evidence in the summary judgment record authenticating it.

### d) 2010 Tax Return for Lloyd Ward, P.C., Plaintiff's App. 400-416

The Court sustains the Movants' objection to the purported 2010 Form 1120S and related documents of Lloyd Ward, P.C. Although the document is signed by the purported preparer, there is no custodian affidavit or other evidence in the summary judgment record authenticating it.

e)    **2012 Tax Return of Lloyd Ward, P.C., Plaintiff's App. 417-424**

The Court sustains the Movants' objection to the purported 2012 Form 1120S and related documents of Lloyd Ward, P.C.  The document is unsigned and marked "copy," and there is no evidence in the summary judgment record authenticating it.

f)    **2012 Tax Return of Lloyd Ward & Associates, P.C., Plaintiff's App. 331**

The Court sustains the Movants' objection to the purported 2012 Form 1120S and related documents of Lloyd Ward & Associates, P.C.  Although the document is signed by the purported preparer, there is no custodian affidavit or other evidence in the summary judgment record authenticating it.

g)    **2010 Tax Return of Lloyd Ward & Associates, P.C., Plaintiff's App. 292-316**

The Court sustains the Movants' objection to the purported 2010 Form 1120S and related documents of Lloyd Ward & Associates, P.C.  Although the document is signed by the purported preparer, there is no custodian affidavit or other evidence in the summary judgment record authenticating it.

h)    **2011 Franchise Tax Report of Lloyd Ward & Associates. P.C., Plaintiff's App.  317-321**

The Court sustains the Movants' objection to the purported 2011 Franchise Tax Report of Lloyd Ward & Associates, P.C.  The document is unsigned and marked "copy," and there is no evidence in the summary judgment record authenticating it.

i)    **2011 Tax Return of Lloyd Ward & Associates, P.C., Plaintiff's App. 322-330**

The Court sustains the Movants' objection to the purported 2011 Form 1120S and related documents of Lloyd Ward & Associates, P.C.  Although the document is signed by the purported

preparer, there is no custodian affidavit or other evidence in the summary judgment record authenticating it.

> **j)  2009 Tax Return of Lloyd Ward Group, P.C. Plaintiff's App. 341-351**

The Court sustains the Movants' objection to the purported 2009 Form 1120S and related documents of Lloyd Ward Group, P.C.  Although the document is signed by the purported preparer, there is no custodian affidavit or other evidence in the summary judgment authenticating it.

> **k)  2011 Tax Return for Lloyd Ward Group, P.C., Plaintiff's App. 352-372**

The Court sustains the Movants' objection to the purported 2011 Form 1120S and related documents of Lloyd Ward Group, P.C.  Although the document is signed by the purported preparer, there is no custodian affidavit or other evidence in the summary judgment record authenticating it.

> **l)  2012 Tax Return for Lloyd Ward Group, P.C., Plaintiff's App. 373-389**

The Court sustains the Movants' objection to the purported 2012 Form 1120S and related documents of Lloyd Ward Group, P.C.  The document is unsigned and marked "copy," and there is no evidence in the summary judgment record authenticating it.

## IV.   FACTUAL AND PROCEDURAL HISTORY

Lloyd filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the Eastern District of Texas on May 1, 2014 (the "**Petition Date**").  The Bankruptcy Case was transferred to the Northern District of Texas on June 5, 2014 via the Order on Unopposed Motion to Transfer Venue [BC No. 1].

The Plaintiff filed his Original Complaint on April 2, 2015, which has been amended twice, resulting in the Complaint being the live complaint before this Court.  The Complaint contains eight numbered counts, comprised of:

- Count I: Reverse Piercing of the Corporate Veil (Alter Ego) Against Amanda, which seeks a judgment declaring that Amanda is the alter ego of GPC and/or BRM and, as such, the assets of GPC and BRM are Amanda's property.

- Count II: Reverse Piercing of the Corporate Veil (Alter Ego) Against Lloyd, which seeks a judgment declaring that Lloyd is the alter ego of GPC and/or BRM and, as such, the assets of GPC and/or BRM are property of Lloyd's bankruptcy estate.[15]

- Count III: Constructive Trust, which seeks a judgment imposing a constructive trust on the properties and assets held by GPC with GPC as the constructive trustee for the benefit of Lloyd's bankruptcy estate and ordering GPC, as constructive trustee, to convey all or part of the properties held by it to Lloyd's bankruptcy estate.

- Count IV: Reimbursement for Time, Toil, and Effort Regarding GPC, which was withdrawn on the record at the Hearing.  Hr'g Tr. 75:14-20 (Branham).

- Count V: Reimbursement for Time, Toil, and Effort Regarding BRM, which was withdrawn on the record at the Hearing.  *Id.*

- Count VI: Declaratory Judgment Regarding GPC, seeking a declaratory judgment that the assets of GPC are property of Lloyd's bankruptcy estate.

- Count VII: Declaratory Judgment Regarding BRM, seeking a declaratory judgment that the assets of BRM are property of Lloyd's bankruptcy estate.

- Count VIII: Substantive Consolidation of GPC and/or BRM with Lloyd's bankruptcy estate so that GPC and/or BRM and all assets held by GPC and/or BRM are property of Lloyd's bankruptcy estate.

The Plaintiff also seeks (1) prejudgment interest as provided by law, (2) post-judgment interest as provided by law from the date of the judgment until paid, (3) reasonable and necessary attorneys' fees, and (4) costs of court.

---

[15] Count I and II are not pled in the alternative, so the relief requested is internally inconsistent.  Obviously, the assets of GPC and BRM cannot be both Amanda's property (Count I) and property of Lloyd's bankruptcy estate (Count II).

Additional information regarding the Defendants is necessary to better understand the Plaintiff's claims.  Lloyd is a Chapter 7 debtor before this Court, and Amanda is his non-debtor wife (the couple was married on June 10, 1999).  Movants' App. 1, 2 (Affidavit of Amanda Ward).  The other two defendants, GPC and BRM, are companies that are allegedly Amanda's separate property.  *Id.* at 2-3 (Affidavit of Amanda Ward).  GPC is a Texas corporation whose assets are comprised primarily of two pieces of real property—a home located at 6040 Preston Creek Drive, Dallas, Texas that the Wards use as their personal residence (the "**Preston Creek Property**") and a condominium unit located at 5841 East University Boulevard, Suite 5841C, Dallas, Texas that is rented to a third party (the "**Condominium**").  *Id.* at 1-3 (Affidavit of Amanda Ward); 51-52 (Affidavit of Lloyd Ward).  BRM operates a business offering billing and collection services to health care companies.  *Id.* at 3 (Affidavit of Amanda Ward).  Under the Complaint, the Trustee seeks to have GPC's and BRM's assets, in whole or part, brought into Lloyd's bankruptcy estate so that they may be liquidated and used to pay his creditors.

## V.    LEGAL ANALYSIS

### A.    Counts I and II—Reverse Piercing of the Corporate Veil (Alter Ego) Against Amanda and Lloyd, Respectively.

With respect to Counts I and II, the Movants argue on summary judgment that reverse piercing is a collection remedy, not an independent cause of action.  And, because the Complaint does not request damages, the remedy of reverse piercing is unavailable as a matter of law.  In response, the Plaintiff argues that (1) reverse piercing is an independent cause of action that may be brought as a stand-alone claim, and (2) in any event, he may rely on the claims of certain of Lloyd's creditors to support his recovery under a reverse piercing theory.  For the reasons

explained below, the Court agrees with the Movants and concludes that summary judgment must be granted in the Movants' favor on Counts I and II.[16]

In support of his first argument, the Plaintiff cites the Court to various cases that refer to alter ego and/or reverse piercing as a "claim" or a "cause of action" that is property of the estate. Plaintiff's Brief at 21-22 (citing *In re S.I. Acquisitions, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisitions, Inc.)*, 817 F.2d 1142, 1152-53 (5th Cir. 1987) (holding "that [plaintiff's] alter ego action is a right of action belonging to S.I.A. and, as such, is 'property of the estate' within the meaning of section 541(a)(1)."); *Rodriguez v. Four Dominion Drive, LLC (In re Boyd)*, 2012 WL 5199141, at *5 (Bankr. W.D. Tex. Oct. 22, 2012) ("[a]lter ego claims are property of the estate" and "[r]everse-piercing actions belong to the trustee, not to one individual creditor of the Debtor"); *Roberts v. J. Howard Bass & Assoc., Inc. (In re Bass)*, 2011 WL 722384, at *6 (Bankr. W.D. Tex. Feb. 11, 2011); *Osherow v. Porras (In re Porras)*, 312 B.R. 81, 94, 137 (Bankr. W.D. Tex. 2004)). The Plaintiff also cites this Court to cases decided in a divorce context, where courts have re-characterized separate property as community property for the purpose of dividing the marital estate without requiring an accompanying claim or judgment. *Id.* at 23 (citing *Zisblatt v. Zisblatt*, 693 S.W.2d 944, 946, 951, 955 (Tex. App.—Fort Worth 1985, writ dism'd); *Dilingham v. Dilingham*, 434 S.W.2d 459 (Tex. Civ. App.—Fort Worth 1968, writ dism'd)).

The Court has reviewed the cases that the Plaintiff relies upon and concludes, as explained below, that they do not support his argument. While the Plaintiff is correct that those courts use the term "claim" and/or "cause of action" when describing reverse piercing or alter ego allegations,

---

[16] Although Lloyd did not move for summary judgment in this Adversary Proceeding, both GPC and BRM did. And, because the Court grants GPC's and BRM's requests for summary judgment on Count II, Lloyd is the sole remaining defendant subject to that count. Because an alter ego claim may not stand without the existence of an alleged alter ego, Count II must also fail as to Lloyd as matter of law. Thus, this Memorandum Opinion and Order fully disposes of Count II as alleged against each of Lloyd, GPC, and BRM.

**MEMORANDUM OPINION AND ORDER**                                                                 **20**

they do not analyze the controlling issue here—*i.e.*, whether alter ego or reverse piercing is a remedy or an independent cause of action. Moreover, the cases decided in a divorce context, which admittedly did not require an underlying claim or judgment, are clearly distinguishable. Here, Lloyd and Amanda remain married and this Court is not tasked with dividing their marital estate so that one spouse may receive a more equitable division of property.

More importantly, both the Fifth Circuit and various Texas courts (including the Texas Supreme Court) have concluded that alter ego is a remedy and not an independent cause of action. For example, in *U.S. Nat'l Ass'n v. Verizon Commc'ns., Inc.*, 761 F.3d 409 (5th Cir. 2014), the trustee of a litigation trust created under a corporate debtor's bankruptcy plan sued the corporation's former parent and various other entities asserting claims for fraudulent transfer, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unlawful dividend, promotor liability, unjust enrichment, and alter ego. *Id.* at 415. In affirming the lower court's ruling that alter ego is not an independent cause of action, the Fifth Circuit held that:

> Count Eleven of the amended complaint for alter ego alleges that the court should "pierce Idearc's corporate veil and hold Verizon liable for all of Idearc's debts, including all debt and other obligations incurred by Idearc in connection with or because of the [s]pin-off." Before the trial, the district court had explained that "alter ego" is not a separate cause of action but a remedy to enforce a substantive right. *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc.*, 3:10–CV–1842–G, 2012 WL 3100778, at *16 (N.D. Tex. July 31, 2012) (citing *Western Oil & Gas JV, Inc. v. Griffiths*, 91 Fed. Appx. 901, 903–04 (5th Cir. 2003) (unpublished); *In re Grothues*, 226 F.3d 334, 337 (5th Cir. 2000)). In its order granting in part and denying in part the motion to dismiss, the district court did not dismiss the alter ego claim to the extent that it could be used as a theory of recovery on the other claims. *Id*. At summary judgment, the district court again stated that it had "already dismissed the plaintiff's alter ego claim, but only to the extent that is pled as a separate cause of action." *U.S. Bank (Summary Judgment)*, 892 F.Supp.2d at 829. Following the bench trial, the court necessarily found that the alter ego claim failed since the Trustee had not prevailed on any of the other claims. Conclusions of Law at 21. *** Since we affirm the district court's entry of judgment in favor of Appellees on the other claims, we affirm the district court on the alter ego claim.

*Id.* at 442. *See also Matthews Const. Co., Inc. v. Rosen*, 796 S.W.2d 692, 693 n.1 (Tex. 1990) ("For purposes of discussion, we refer to Matthews' suit as an 'alter ego' suit; however, the mere fact that a corporation operates as an alter ego does not give rise to a separate and independent cause of action and this opinion should not be so construed."); *Dodd v. Savino*, 426 S.W.3d 275, 292 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("Alter ego, or piercing the corporate veil, is not an independent cause of action, but is instead a means of imposing liability for an underlying cause of action."); *Watkins v. Basurto*, 2011 WL 1414135, at *8 (Tex. App.—Houston [14th Dist.] April 14, 2011, no pet.) ("Additionally, we note the trial court's finding that Watkins was the alter ego of his business entities does not itself support a claim for damages—there must be a meritorious underlying cause of action against those entities."); *Wilson v. Davis*, 305 S.W.3d 57, 68 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (same).

The Plaintiff attempts to counter these cases by arguing that reverse piercing is different than alter ego, as the former arises under common law and the latter is statutorily based, presumably referring to § 21.223 of the Texas Business Organizations Code. Plaintiff's Brief at 24-25. The Plaintiff further argues that, "unlike traditional veil piercing, which is a statutory doctrine, reverse veil-piercing is a common law doctrine whereby an entity's assets can be included in the individual's bankruptcy estate on a showing of alter ego." *Id.* at 24 (citing *In re Juliet Homes*, LP, 2011 WL 6817928, at *18-19 (Bankr. S.D. Tex. Dec. 28, 2011)).

The Court disagrees with these arguments for several reasons. First, the Plaintiff's reference to a statutory-based alter ego remedy is misleading. Under § 21.223, the shareholder of a corporation,

> may not be held liable to the corporation or its obligees with respect to ... any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, beneficial owner, subscriber, or affiliate

is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory[.]

Tex. Bus. Org. Code § 21.223(a)(2).  This statute provides an exception to this exemption from liability "if the obligee demonstrates that the holder, beneficial owner, subscriber, or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate."  *Id.* § 21.223(b).  Notably, the statute limits the use of alter ego, which appears contrary to the Plaintiff's argument that there is a statutory-based alter ego remedy.

Second, under Texas law, reverse piercing is accomplished under common-law alter ego theory.  *See Zahra Spiritual Trust,* 910 F.2d at 243-244.  Accordingly, the two may not be separated as the Plaintiff suggests.  *See Southmark Corp. v. Crescent Heights VI, Inc. (In re Southland Corp.)*, 1996 WL 459958, at *6 (5th Cir. July 26, 1996) (unpublished) ("while one may attempt an ordinary piercing of the corporate veil under any of three theories, *supra*,[17] Texas law apparently permits a reverse piercing only under the alter ego theory.  *Zahra Spiritual Trust*, 910 F.2d at 244.").

Finally, the Court is to consider similar factors when analyzing common-law alter ego and reverse piercing, which further supports its conclusion that reverse piercing, like alter ego, is a remedy and not an independent cause of action.  *See Zahra Spiritual Trust*, 910 F.2d at 243- 44.

---

[17]  As explained in *Southmark*, the three theories are alter ego, illegal purpose, and sham to perpetrate a fraud.  *Id.* at * 5 (citing  *Gibraltar Sav. v. LDBrinkman Corp*., 860 F.2d 1275, 1286-89 (5th Cir.1988), *cert. denied*, 490 U.S. 1091 (1989).  Alter ego applies where there is such a unity between the corporation and an individual or parent corporation that the separateness of the entities has ceased and holding only one liable would result in an injustice. *Gibraltar Sav.*, 860 F.2d at 1287.  Illegal purpose relates to the use of a corporate fiction to circumvent a law, evade an existing legal obligation, or to take similar actions.  It differs from alter ego "because it can be used even when all corporate legal formalities have been kept."  *Id.* at 1289.  Finally, sham to perpetrate a fraud includes "the concept of inadequate capitalization as a basis for corporate disregard," and places the focus of veil-piercing on "some inequitable result for the claimant because of abuses of the corporate form."  *Id.*  The *Gibraltar* case discusses each of these theories in detail, including the necessary elements; however, the purpose of this footnote is only to give a general overview for clarity's sake.

Overall, there is simply no basis to hold that, although alter ego is a remedy under Texas law, reverse piercing is elevated in status to an independent cause of action.  For these reasons, the Court concludes that reverse piercing is not an independent cause of action under Texas law and that the Plaintiff must either have a judgment in-hand or an underlying claim within the Complaint that would support a recovery under his reverse-piercing theory, neither of which is true here.

Possibly foreseeing the Court's conclusion, the Plaintiff argues that there *is* a judgment supporting Counts I and II:

> Defendants argue that Alter-Ego is not a claim but merely a remedy. But what Defendants fail to understand is that the creditors have already pled a "Claim" for which the alter ego remedy would be appropriate. That claim has already been litigated and won, at least by the Judgement Creditors. Indeed, the Supreme Court of Texas has held exactly that. In the case of *Matthews Construction Co. Inc. v. Rosen*, 796 S.W.2d 692 (Tex. 1990), the Texas Supreme Court, in reversing the Court of Appeals found that an action instituted solely for the purpose of establishing alter-ego liability in order to be able to collect on a prior judgment was not only permitted but appropriate.

Plaintiff's Brief at 18.  Although the Court agrees with the general proposition that a judgment creditor may seek to collect his judgment through an alter ego remedy, it concludes that the Plaintiff does not hold such a judgment.  Of significance, the "claim" that the Plaintiff refers to is a final judgment (the "**Final Judgment**")[18] held by certain of Lloyd's creditors (the "**Judgment Creditors**"), not the Plaintiff himself.

Moreover, as to Count I, the Court notes that neither Amanda, GPC, nor BRM is liable under the Final Judgment.  Thus, the Count I claim, which seeks a finding that GPC and BRM are Amanda's alter ego, must fail as a matter of law because there is (1) no cause of action within the Complaint seeking damages against Amanda, GPC, and/or BRM that, if successful, could be used to support a recovery under a reverse piercing theory, and (2) nothing in the summary judgment

---

[18] *See* Amended Final Judgment, Cause No. 3:10-CV-1332-P, ECF No.246, Northern District of Texas, Dallas Division, of which this Court takes judicial notice.

record showing that the Plaintiff holds a judgment against Amanda, GPC, and/or BRM that could support a recovery under a reverse piercing theory.

Count II is somewhat different than Count I because, although neither GPC nor BRM are liable on the Final Judgment, Lloyd is. The Final Judgment, however, is not held by the Plaintiff. It is held by the Judgment Creditors who are not plaintiffs in this Adversary Proceeding.[19] And, as explained by the Fifth Circuit in *U.S. Bank Nat. Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d at 442, a bankruptcy trustee may not rely on the claims of creditors as a basis for recovery under an alter ego theory:

> According to the Trustee, "regardless of whether the alter ego is a 'claim' or a 'remedy,' the district court's dismissal was improper in the bankruptcy context" because the Trustee is empowered to sue Verizon based on the underlying claims of the creditors. The Trustee argues that the alter ego claim was independent of a valuation determination and that it should be tried before a jury. However, under Texas law, while alter ego theory is a means to pierce the corporate veil, it still relies on an underlying claim. *In re Grothues*, 226 F.3d at 337–38. Since we affirm the district court's entry of judgment in favor of Appellees on the other claims, we affirm the district court on the alter ego claim.

For these reasons, the Court concludes that Counts I and II fail as a matter of law and that summary judgment must be granted in the Movants' favor with respect to them.[20]

## B. Count III: Constructive Trust

With respect to Count III, the Movants request summary judgment on two grounds. First, the Movants argue that constructive trust is a remedy and not an independent cause of action. And, according to the Movants, because there is no request for damages within the Complaint, the Count

---

[19] The Judgment Creditors are co-plaintiffs with the Plaintiff in a separate adversary proceeding challenging Lloyd's bankruptcy discharge and the dischargeability of the Final Judgment (the "**Discharge Proceeding**"). *See* Frank v. Ward, Adv. Proc. No. 15-3050-BJH. The Discharge Proceeding is scheduled to be tried concurrently with this Adversary Proceeding. *See* Agreed Order Regarding Plaintiff's Motion to Consolidate Docket Numbers 15-03037 and 15-03050 [AP No. 81]. The Plaintiff is not a party to the Final Judgment and the Judgment Creditors are not a party to this Adversary Proceeding.

[20] Because Counts I and II fail as a matter of law, the Court will not address the Movants' alternative argument that the summary judgment record does not raise a genuine issue of material fact as to Counts I and II.

III claim fails as a matter of law. Motion for Summary Judgment at 4 (citing cases). Second, the Movants argue that, in any event, the imposition of a constructive trust requires a finding of a breach of fiduciary duty or actual fraud, neither of which is alleged in the Complaint or supported by the summary judgment record. *Id.*

Plaintiff's Brief does not address the Movants' first argument. When questioned on that issue at the Hearing, Plaintiff's counsel conceded that, if constructive trust is a remedy and the Plaintiff is not allowed to rely on the claims of creditors (in particular the Judgment Creditors), the Count III claim fails as a matter of law. Hr'g Tr. 103:14-104:9 (Branham). With respect to the Movants' second argument, the Plaintiff argues that the question of fraud is too fact specific for summary judgment, and the decision should be made after trial. Plaintiff's Brief at 31. The Court will address the Movants' arguments in turn.

"Under Texas law, a constructive trust is not actually a trust, but rather an equitable remedy imposed by law to prevent unjust enrichment resulting from an unconscionable act." *In re Haber Oil Co., Inc*., 12 F.3d 426, 436 (5th Cir. 1994); *Thigpen v. Locke*, 363 S.W.2d 247, 250 (Tex. 1963) ("equity will impose a constructive trust to prevent one who obtains property by fraudulent means from being unjustly enriched"). "The two circumstances that generally justify the imposition of a constructive trust are actual fraud and the breach of a confidential or fiduciary relationship." *Haber*, 12 F.3d at 436 (citing *Meadows v. Bierschwale*, 516 S.W.2d 125, 128 (Tex. 1974)).

Accordingly, to impose a constructive trust here, the Plaintiff must establish "(1) breach of a fiduciary relationship or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing of the property to an identifiable res." *Id*. at 437 (citing M*onnig's Dept. Stores, Inc. v. Azad Oriental Rugs, Inc. (In re Monnig's Dept. Stores, Inc.)*, 929 F.2d 197, 201 (5th Cir. 1991)). "The burden of establishing the existence of the constructive trust rests on the claimant, as does the burden of

identifying and tracing the trust property." *Id*. at 436 (citations omitted). "Because it is a remedy, one seeking it first must have a cause of action warranting its imposition." *Beverly Found. v. W.W. Lynch,* 301 S.W.3d 734, (Tex. App.—Amarillo 2010, no pet. (citations omitted)). As explained by the court in *David Wight Constr. Co., Ltd.,* 424 S.W.3d 738 (Tex. App.—Houston [14th Dist.] 2014):

> In its second issue, Wight Construction argues that the trial court erred in granting the Bank's motion for summary judgment as to Wight Construction's request for the remedy of constructive trust. Wight Construction correctly notes that the imposition of a constructive trust is a remedy, not an independent claim. *See Beverly Foundation v. W.W. Lynch*, 301 S.W.3d 734, 736 (Tex. App.—Amarillo, 2009, no pet.); *Sherer v. Sherer*, 393 S.W.3d 480, 491 (Tex. App.—Texarkana 2013, pet. denied); *LTTS Charter School, Inc. v. Palasota*, 362 S.W.3d 202, 209 (Tex. App.—Dallas, 2012, no pet.). But, the only claim against the Bank as to which Wight Construction has assigned error on appeal is its claim for common-law fraud, and we already have concluded that the trial court correctly granted summary judgment as to this claim. *See Beverly Foundation*, 301 S.W.3d at 736; *Sherer*, 393 S.W.3d at 491; *LTTS Charter School, Inc.*, 362 S.W.3d at 209. Thus, no claim by Wight Construction against the Bank remains that could support imposition of a constructive trust. Accordingly, we overrule Wight Construction's second issue.

*Id.* at 742; *see also Roach v. Berland*, 2014 WL 6772612, at *2 (N.D. Tex. Dec. 2, 2014) (dismissing constructive trust as a claim, "while noting that this does not preclude third-party plaintiffs from establishing on some legally available basis that they are entitled to a constructive trust as a *remedy*" (emphasis in original)); *Sherer*, 393 S.W.3d at 491 ("An underlying cause of action such as a breach of fiduciary duty, conversion, or unjust enrichment is required. The constructive trust is merely the remedy used to grant relief on the underlying cause of action.").

With this precedent in mind, the Court looks to the claims alleged in the Complaint, which are reverse piercing (alter ego), declaratory judgment (based upon substantive consolidation), and substantive consolidation. Notably, none of these claims support a remedy of constructive trust. First, as explained above, *see* § V.A, *supra*, the claims for reverse piercing fail as a matter of law because reverse piercing is a remedy and not an independent cause of action. Second, the

**MEMORANDUM OPINION AND ORDER**                                                    27

remaining claims are all for, or based upon, substantive consolidation. And, if this Court ultimately orders substantive consolidation, the constructive trust claim would be moot because GPC's assets would be consolidated into Lloyd's bankruptcy estate and there would be nothing upon which to impose a constructive trust in the Plaintiff's favor. Obviously, if the substantive consolidation claim fails, there is no underlying claim for which constructive trust can be used as the remedy.

For these reasons, the Court concludes that the Count III constructive trust claim fails as a matter of law. Alternatively, the Court also concludes that the Plaintiff failed to raise a genuine issue of material fact as to each element necessary for the imposition of a constructive trust; specifically, that there was a breach of fiduciary duty or actual fraud. To explain its ruling, the Court first turns to the relevant allegations in the Complaint:

> 79. Plaintiff incorporates each of the allegations in the preceding paragraphs in their entirety.
>
> 80. Proceeds from the sale of the McCommas Property for which Ward was a cograntor were used for the purchase of the 6040 [Preston Creek] property. This transaction resulted in purchase of the 6040 property using, at a minimum, some community funds. Property purchased with separate and community funds is owned as tenants in common by the separate and community estates and, at a minimum, a tenancy in common exists as to the 6040 [Preston Creek] property. As a result, even if A. Ward and Ward are not the alter egos of GPC, the legal title to the properties held by GPC rests with GPC, while the equitable title rests in the community property of A. Ward and Ward. This creates a resulting trust[21] under

---

[21] Although Count III is clearly titled "Constructive Trust," the Plaintiff references a resulting trust within the Complaint. "Although they are often confused, resulting trusts and constructive trusts rely on two different theoretical bases." *Traxel v. Bishop,* 201 S.W.3d 290, 295 (Tex. App.—Dallas 2006, no pet.). As explained by the court in *Traxel*:

> Both are implied by operation of law to prevent unjust enrichment. However, a resulting trust— more accurately denominated a purchase money resulting trust—is an equitable remedy primarily involving consideration. A resulting trust arises by operation of law when title is conveyed to one person but the purchase price or a portion thereof is paid by another. The parties are presumed to have intended that the grantee hold title to the use of him who paid the purchase price and whom equity deems to be the true owner. The trustee of a resulting trust is generally responsible only for conveying the property to the beneficiary or in accordance with his directions.

*Id.* at 298 (citations omitted). Despite the reference to the "resulting trust," the Plaintiff's Brief makes it abundantly clear that it is a constructive trust that is being requested. Plaintiff's Brief at 30-34 (listing the three elements of a constructive trust).

Texas law in favor of the estate for the community and separate property of Ward that were used to purchase the 6040 property.[22]

81. As such, the estate has been injured by the refusal of GPC to return the community and separate properties that it holds, which are the property of the estate of the Debtor. Accordingly, this Court should declare that some or all of the title to the 5841 [the Condominium] and 6040 [Preston Creek] properties should be transferred to the estate of the Debtor.

Complaint ¶¶ 79-81.

As just noted, the elements necessary to impose a constructive trust are: (1) breach of a fiduciary relationship or actual fraud, (2) unjust enrichment of the wrongdoer, and (3) tracing of the property to an identifiable res. Focusing on the first factor, the Complaint fails to allege either breach of a fiduciary duty or actual fraud.[23] When addressing this issue in his brief, the Plaintiff argues that a finding of fraud is too fact intensive to be made on summary judgment, and then goes on to argue he has met the other two elements for the imposition of a constructive trust. Plaintiff's Brief at 31. Of significance, however, the Plaintiff failed to cite this Court to any allegations of fraud in the Complaint or any portion of the summary judgment record showing that any of the Defendants committed fraud in relation to the purchase, maintenance, or improvement of GPC's assets, or that would permit the Court to infer that such a fraud occurred. Accordingly, even assuming that the Plaintiff established a genuine issue of material fact regarding unjust enrichment of the wrongdoer and tracing of the property to an identifiable res, the Count III claim fails as a matter of law.

---

[22] The Plaintiff also argues that the use of community funds to purchase an asset is all that is required to impose a constructive trust. Plaintiff's Brief at 32. As previously explained, that is not the law in the state of Texas.

[23] Indeed, the words "fiduciary duty" do not appear in the Complaint. Although the words "fraud" and "fraudulent" do appear in the Complaint, they are not in a context relevant to the proposed imposition of a constructive trust against GPC. *See* Complaint §§ 19 (describing a finding of fraudulent conduct in relation to a fine associated with a suspension of Lloyd's law license), 40 (alleging Ward deposited funds into BRM to fraudulently conceal the nature of his available funds), 48 (alleging if income was diverted from LWPC to WFT, it was done so fraudulently).

MEMORANDUM OPINION AND ORDER                                                                29

For either or both of these reasons, the Court concludes that summary judgment must be granted in the Movants' favor as to Count III of the Complaint.

### C.    Counts VI and VII: Declaratory Judgment Regarding GPC and BRM, Respectively

Counts VI and VII seek a declaratory judgment that the assets of GPC and BRM are property of Lloyd's bankruptcy estate.  At the Hearing, the Court asked Plaintiff's counsel to explain the legal theory underlying his request for a declaratory judgment, to which counsel responded that "substantive consolidation [Count VIII] would be the only claim that would permit that." Hr'g Tr. 126:21-22 (Branham).  Because Counts VI and VII are wholly dependent on Count VIII, the Court will not separately analyze Counts VI and VII, instead deferring to its analysis of Count VIII as that analysis is dispositive of Counts VI and VII.

### D.    Count VIII: Substantive Consolidation

Before beginning its analysis of the summary judgment record, the Court must first address the Movants' argument that the Court's "power to apply substantive consolidation is questionable." Motion for Summary Judgment at 5 (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308 (1999)).  According to the Movants:

> In *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, the Supreme Court held that a federal district court lacks jurisdiction to enjoin a defendant's transfer of assets prior to judgment, no matter how egregious the risk of irreparable harm, and held that a federal court is limited to such equitable remedies as existed in the English Court of Chancery in 1789, the year that Congress enacted the First Judiciary Act. Substantive consolidation did not exist in 1789.

Motion for Summary Judgment at 5-6 (footnote omitted).

Notably, the Movants do not cite a case decided after *Grupo Mexicano* that supports their argument.  And, after conducting its own research, the Court could not find one either.  In fact, each case the Court did find rejected the Movants' argument here that *Grupo Mexicano* divested the bankruptcy courts of the authority to order substantive consolidation.  *See, e.g., Wells Fargo*

*Bank of Texas v. Sommers (In re Amco Insurance)*, 444 F.3d 690, 694 (5th Cir. 2006) (noting that "[t]he district court ... determined that substantive consolidation remains an available remedy despite the *Grupo Mexicano* holding, reading *Grupo Mexicano* narrowly and noting that *Grupo Mexicano* did not discuss the remedy of substantive consolidation," but finding it unnecessary to decide the issue itself); *see also Deluxe Pattern Corp. v. NM Holdings Company, LLC*, 407 B.R. 232, 274 (Bankr. E. D. Mich. 2009) (noting that the few cases that have addressed this issue have all held that bankruptcy courts continue to have authority to order substantive consolidation after *Grupo Mexicano*); *In re Stone & Webster, Inc.,* 286 B.R. 532, 538 (Bankr. D. Del. 2002) (stating that the *Grupo Mexicano* decision "ha[d] nothing to do with substantive consolidation or the authority of a bankruptcy court to grant the remedy of substantive consolidation" and that substantive consolidation's "roots extend to at least as far back as the Bankruptcy Act of 1898, and nothing in the Bankruptcy Code or case law suggests that the remedy is not available today"). Accordingly, this Court concludes that: (1) it has the authority to order substantive consolidation, and (2) such authority was not undermined by the Supreme Court's decision in *Grupo Mexicano.*

Moving on to the merits then, substantive consolidation is a remedy that "is [a] mechanism for administering the bankruptcy estate of multiple, related entities." *In re Babcock & Wilcox Co.*, 250 F.3d 955, 958 (5th Cir. 2001); *see Gandy v. Gandy (In re Gandy)*, 299 F.3d 489, 499 (5th Cir. 2002). According to the Fifth Circuit, "[s]ubstantive consolidation 'treats separate legal entities as if they were merged into a single survivor left with all the cumulative assets and liabilities (save for inter-entity liabilities, which are erased). The result is that claims of creditors against separate debtors morph to claims against the consolidated survivor.'" *Happy v. Equity Bank SSB (In re Green Aggregates Inc.)*, 345 Fed. App'x 890, 891 (5th Cir. 2009) (unpublished) (quoting *In re Owens Corning*, 419 F.3d 195, 205 (3d Cir. 2005)). No provision of the Bankruptcy Code provides

for substantive consolidation outside of a plan context; instead, the authority is derived from the equitable powers of the bankruptcy court. *See In re AHF Development, Ltd.*, 462 B.R. 186, 194 (Bankr. N.D. Tex. 2011); *In re Gladstone*, 513 B.R. at 157 (citing *In re Pearlman*, 462 B.R. at 854); *In re Permian Producers Drilling, Inc.*, 263 B.R. at 515 (quoting 11 U.S.C. § 105(a)). The Fifth Circuit cautions that the power to substantively consolidate is a drastic remedy that must be used sparingly. *Bank of New York Trust Co. v. Official Unsecured Creditors' Committee (In re Pacific Lumber, Co.)*, 584 F.3d 229, 249 (5th Cir. 2009) ("Substantive consolidation is an 'extreme and unusual remedy.'") (citing *Gandy*, 299 F.3d at 499); *see also In re Introgen Therapeutics, Inc.*, 429 B.R. 570, 581 (Bankr. W.D. Tex. 2010) (citing *In re Amco Ins.*, 444 F.3d at 696–97).[24]

Despite the fact that the Fifth Circuit has urged that the remedy of substantive consolidation be used sparingly, it has not articulated a standard for imposing the remedy and courts generally look to a number of factors in determining whether substantive consolidation is appropriate. *See In re AHF Development, Ltd.*, 462 B.R. at 195-98 (describing the approaches used by courts). A list of these non-exclusive factors most commonly include: (1) the degree of difficulty in segregating and ascertaining individual assets and liability; (2) the presence or absence of consolidated financial statements; (3) the profitability of consolidation at a single physical location; (4) the commingling of assets and business functions; (5) the unity of interests and ownership between the various corporate entities; (6) the existence of parent and inter-corporate guarantees on loans; and (7) the transfer of assets without formal observance of corporate formalities. *In re Introgen Therapeutics, Inc.*, 429 B.R. at 582 (citing *In re Permian Producers*,

---

[24] The Bankruptcy Code clearly permits consolidation within a plan context. *See* 11 U.S.C. § 1123(a)(5)(C) ("Notwithstanding any otherwise applicable nonbankrutpcy law, a plan shall … (5) provide adequate means for the plan's implementation, such as … (C) merger or consolidation of the debtor with one or more persons…."). However, the Bankruptcy Case is a Chapter 7 liquidation case, which makes § 1123 inapplicable since no plan or reorganization can be filed.

263 B.R. at 518); *see also In re Drexel Burnham Lambert Group Inc.*, 138 B.R. 723, 764 (Bankr. S.D.N.Y. 1992); *In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005) (articulating principles courts should consider when engaging in substantive consolidation analysis).  Regardless of which factors are considered, "[w]hat is clear is that no single element or group of elements is determinative to the outcome.  At a minimum, however, there must be a close relationship between the two entities for consolidation to occur."  *In re AHF Development, Ltd.*, 462 B.R. at 196.

The Second Circuit distilled the factors courts have considered into two critical ones: "(i) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit ...; or (ii) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors."  *In re Augie/Restivo Baking Co.*, 860 F.2d 515, 519 (2d Cir. 1988).  In slight contrast, the Third Circuit states the test as follows:

> In our Court what must be proven (absent consent) concerning the entities for whom substantive consolidation is sought is that (i) prepetition they disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity, or (ii) postpetition their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors.

*In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005).  Regardless of the approach followed, the implication of the varying factors is that the decision to substantively consolidate two or more entities is extremely fact-specific and will vary on a case-by-case basis.

With this precedent in mind, the Court will turn to the Motion for Summary Judgment. The Movants argue that the Plaintiff improperly relies on the alleged facts supporting the alter ego allegations against Lloyd in Count II in support of Count VIII.  According to the Movants, alter ego and substantive consolidation are unique remedies with different considerations; thus, the summary judgment record allegedly supporting the alter ego claims pled in the Complaint is insufficient to support the substantive consolidation claim pled in Count VIII.  The Movants then

go on to address specific alter ego allegations, attempting to explain away many of the Defendants' actions that are reflected in the summary judgment record.  Motion for Summary Judgment at 8-15, 18-23.  The Plaintiff responds that the grounds alleged in support of the alter ego counts are sufficient to meet the standard for substantive consolidation, including citing to one court that has held it is proper to substantively consolidate alter ego entities.  Plaintiff's Brief at 6-15 (citing *In re Boyd,* 2012 WL 5199146, at *4).

To properly address the parties' arguments, the Court will analyze GPC and BRM separately, below.

### 1.    Substantive Consolidation Allegations Involving GPC

With respect to GPC, the main allegations are that (1) community property was used to purchase, improve, and/or maintain the Condominium and the Preston Creek Property that are titled in GPC's name, and (2) although Amanda is the sole shareholder of GPC, it was Lloyd who actually controlled GPC and used it to conceal assets.  The Court will address these allegations in turn.

By way of factual background, GPC was incorporated on July 30, 1998, with Amanda as the sole shareholder.  Movants' App. 1 (Affidavit of Amanda Ward).  The corporation was formed to take title to the Condominium (which was purchased on August 4, 1998) in order to protect Amanda from potential liability associated with renting the Condominium to third parties. Plaintiff's App. 3 (June 16, 2015 Deposition of Amanda at 9:17-11:15); Movants' App. 1-2 (Affidavit of Amanda Ward), 12 (Certificate of Incorporation), 51-52 (Affidavit of Lloyd Ward).[25] Although the Plaintiff argues that community funds were used to pay property taxes on the Condominium, the cited-to portions of the summary judgment record fail to support that argument.

---

[25] All of this occurred prior to the Wards' marriage on June 10, 1999.  Movants' App. 2 (Affidavit of Amanda Ward).

Plaintiff's Brief at 9 & n.32.[26]  In short, the Plaintiff does not cite this Court to any portion of the summary judgment record from which it could infer that community property was used to purchase, improve, or maintain the Condominium.

Turning to the other real property asset owned by GPC, Amanda owned a home located at 5511 McCommas Boulevard, Dallas, Texas (the "**McCommas Property**") prior to her marriage to Lloyd.  Movants' App. 1, 2 (Affidavit of Amanda Ward), 5-7 (Warranty Deed with Vendor's Lien).  At all times, Amanda considered the McCommas Property her separate property.  *Id.* at 1 (Affidavit of Amanda Ward), 51 (Affidavit of Lloyd Ward).  When the McCommas Property was sold to a third party in March 2000, both Amanda and Lloyd signed the Warranty Deed.  *Id.* at 22-24 (Warranty Deed).  It was the proceeds of this sale of the McCommas Property, plus a loan from Amanda's father, John Glenn, to GPC, that were used to purchase the Preston Creek Property.  *Id.* at 2 (Affidavit of Amanda Ward); Plaintiff's App. 68, 70-71 (February 2, 2015 Deposition of Amanda at 147:13-148:2, 155:10-156:10; 157:25-158:2).[27]  Later, in 2012 and 2013, the Preston Creek Property was renovated.  According to the Plaintiff, a substantial portion of the funds used to purchase and later renovate the Preston Creek Property were community funds.

Turning first to the funds used to purchase the Preston Creek Property, the Plaintiff argues that Lloyd's signature on the Warranty Deed proves that the McCommas Property and the proceeds from its sale were community property.  The Court disagrees, as Lloyd's signature on the Warranty Deed simply comports with the Texas law requirement that both spouses sign a deed transferring

---

[26] The cited-to portions of the summary judgment record show that taxes for the Condominium were, at least on one occasion, paid from Amanda's personal account; however: (1) she could not recall whether that was a joint account she shared with Lloyd, and (2) she did not believe that Lloyd ever deposited funds into that account. Plaintiff's App. 22 (June 16, 2015 Deposition of Amanda Ward at 86:2-87:16), 71 (February 2, 2015 Deposition of Amanda Ward at 158:9-160:1), 813 (check used to pay taxes listing only "Amanda G. Ward" as the account holder).

[27] Although the Plaintiff alleges that John Glenn (Amanda's father) testified that the loan he made was to Amanda personally, that allegation is not supported by the summary judgment record.  Plaintiff's App. 894 (June 27, 2016 Deposition of John Glenn at 39:3-12 (first stating he loaned the money to Amanda personally "as far as [he] was concerned," but then admitting "I don't know who I loaned it to.")).

**MEMORANDUM OPINION AND ORDER** 35

title to real property, even if the real property is the separate property of one spouse. *See* TEX. FAM. CODE § 5.001.[28] And, other than Lloyd's signature on the Warranty Deed, there is nothing in the summary judgment record suggesting that the McCommas Property was anything other than Amanda's separate property. Indeed, all evidence in the summary judgment record is to the contrary. Movants' App. 1-2 (Affidavit of Amanda Ward), 51 (Affidavit of Lloyd Ward). However, the funds used to repay the loan to Amanda's father appear to have come from various sources, including some community funds. Plaintiff's App. 26 (June 16, 2015 Deposition of Amanda at 102:5-104:8), 68 (February 2, 2015 Deposition of Amanda at 148:3-16).

Moving on to the renovations, the summary judgment record clearly reflects that at least a portion of the renovation costs were paid with community funds. Plaintiff's App. 80-81, 83, 85, 86, 88, 89-90 (February 2, 2015 Deposition of Amanda at 195:5-196:1 (landscaping), 197:19-198:1 (Austin Taylor Group), 208:1-8 (landscaping), 214:16-215:1 (Austin Taylor Group), 220:22-25 (landscaping), 225:20-25 (Austin Taylor Group), 228:6-10 (PCF Fence), 232:22-233:3 (Austin Taylor Group)); 134 (check to Austin Taylor Group); 135 (check to PFC Fence); 136 (check to Austin Taylor Group); 831-833 (checks to Austin Taylor Group); 826-828 (checks to Original Landscape Concepts). Notably, Amanda does not remember who decided which account the renovation costs would be paid from. *Id.* at 25 (June 16, 2015 Deposition of Amanda at 99:12-14). And, if there were contracts with the Austin Taylor Group or others related to the improvements to the Preston Creek Property, Amanda does not know whether those would have been signed by her, Lloyd, or GPC. *Id.* at 30 (117:3-13). Thus, the summary judgment record

---

[28] "Whether the homestead is the separate property of either spouse or community property, neither spouse may sell, convey, or encumber the homestead without the joinder of the other spouse except as provided in this chapter or by other rules of law." TEX. FAM. CODE § 5.001.

supports the Plaintiff's allegations that at least a portion of the funds used to purchase and improve the Preston Creek Property were community funds, which are now co-mingled with GPC's assets.

The summary judgment record also supports the Plaintiff's allegations that, although Amanda claims to be GPC's sole owner and manager, Movants' App. 1-2 (Affidavit of Amanda Ward), Lloyd exercised substantial control over GPC. For example, although GPC's only income is rental income from the Condominium, Amanda cannot explain large deposits into GPC's bank account, including a $24,000 deposit in January 2015. Plaintiff's App. 4 (June 16, 2015 Deposition of Amanda at 13:14-15:17). Nor can Amanda explain why a $10,000 check payable to GPC from VL Capital, which Lloyd signed on VL Capital's behalf, was deposited into GPC's bank account in January 2010. *Id.* at 12 (48:11-21). Although the memo line on the check reads "Repay Loan," Amanda does not recall GPC ever loaning VL Capital any money. *Id.* at 13 (June 16, 2015 Deposition of Amanda at 49:7-9; 49:23-50:2); 639 (copy of check).[29] The same is true for a $1,500 check from VL Capital made payable to GPC and deposited into GPC's account in February 2010. *Id.* at 12 (48:11-17). Amanda also does not recall purchasing a $3,294 cashier's check for Lloyd with funds from GPC's account on August 9, 2013. *Id.* at 7 (25:17-26:12). The bank records for GPC indicate that the check was payable to the "Texas State Bar." *Id.* at 750. The amount corresponds to a fine imposed on Lloyd related to the suspension of his license to practice law, clearly a personal expense. *Id.* at 835-841 (Agreed Judgment of Partially Probated Suspension signed July 29, 2013 and imposing a $3,293.75 fine), 749-750 (bank records).

Lloyd has also signed at least one document holding himself out as an officer of GPC. *Id.* at 812 (Statement of Change of Registered Office for GPC).[30] Finally, Lloyd also caused several

---

[29] Notably, Amanda filled out the check from VL Capital to GPC that Lloyd signed. *Id.* (49:10-14).

[30] In his affidavit, Lloyd states that he signed the document as GPC's attorney. Movants' App. 56-57 (June 19, 2015 Deposition of Lloyd). However, the signature block states that the signature is of an "(Authorized Officer of

properties to be transferred to GPC as collateral to secure the payment of legal fees owing to LWA from a third party client of LWA. *Id.* at 100-101 (March 4, 2013 Deposition of Amanda at 38:16-41:18). Lloyd handled those transactions, apparently without any meaningful involvement from Amanda, recorded the transfers of title to GPC without her knowledge, and subsequently coordinated the transfer of title to those properties out of GPC to a third party. *Id.* at 101-104 (41:15-18; 56:8-57:6; 60:2-12), 75-76 (February 2, 2016 Deposition of Amanda at 174:16-175:1; 177:1-179:3; 180:15-23).

Thus, even though the summary judgment record supports these allegations in the Complaint, the Plaintiff has nonetheless failed to raise a genuine issue of material fact with respect to each element of his claim for substantive consolidation. All that the summary judgment record shows is that community funds were partially used to purchase and improve the Preston Creek Property, and Lloyd exerted some level of control over GPC. As clearly reflected in the factors discussed above, *see* § D, *supra,* far more than this is required to impose the "extreme and unusual" remedy of substantive consolidation. *See In re Pacific Lumber, Co.*, 584 F.3d at 249. Notably, there is nothing in the summary judgment record showing that (1) Lloyd's and GPC's assets and liabilities are inextricably intertwined, (2) Lloyd's or GPC's respective creditors dealt with them as a single economic unit, (3) there was a comingling of business functions between Lloyd and GPC, or (4) there exists any shared debt or debt held by one that was guaranteed by the other.[31]

---

Corporation)." *Id.* at 812. This competing evidence is sufficient to create a genuine issue of material fact as to whether Lloyd held himself out as an officer of GPC.

[31] The remaining factors often considered by courts are not particularly relevant to this Adversary Proceeding, including (1) the presence or absence of consolidated financial statements, since there is no indication GPC created financial statements, and (2) the profitability of consolidation at a single physical location, which the Court does not believe is applicable. Although Lloyd did transfer properties into, and then out of, GPC apparently without following corporate formalities, it was a single instance that involved third parties. To the Court, those actions go more towards showing Lloyd's control over GPC than the systematic transfer of assets among related entities.

MEMORANDUM OPINION AND ORDER                                                          38

For these reasons, the Court concludes that the Plaintiff failed to raise a genuine issue of material fact with respect to the elements of his claim that GPC should be substantively consolidated with Lloyd's bankruptcy estate and that Movants' request for summary judgment on Count VIII as to GPC must be granted.

### 2.    Substantive Consolidation Allegations Involving BRM

Count VIII of the Complaint also seeks to substantively consolidate BRM with Lloyd's bankruptcy estate, incorporating the facts that allegedly support the alter ego allegations in Count II as support for the substantive consolidation allegations in Count VIII.  Complaint ¶¶ 88-100. And, as with GPC, the Movants argue that alter ego and substantive consolidation are unique remedies with different considerations; thus the summary judgment record allegedly supporting Count II is insufficient to support Count VIII.   For the reasons explained below, the Court concludes that the Plaintiff failed to raise a genuine issue of material fact as to Count VIII as pled against BRM.

In his brief, the Plaintiff details various portions of the summary judgment record in support of his allegation that BRM should be substantively consolidated into Lloyd's bankruptcy estate.  For example:

> The bookkeeper for Ward's law firm [LWA] also keeps the books for BRM although she is not employed by BRM.  She cuts the checks for BRM and can cut a check from LWA or BRM depending on whether BRM has money to pay its bills. BRM and LWA also share an IT director. …

> BRM shared a phone system with LWA until 2015. LWA paid for the phones. LWA also paid for BRM employees' payroll and health insurance premiums. LWA also pays other bills for BRM as needed. BRM also listed LWA's address as its address. BRM leased office space from Lloyd and only paid rent occasionally. Lloyd, through his alter ego entity LWA, covers BRM's financial shortfalls as long as LWA has available funds.

> BRM does debt collection for clients. When collecting on bad debts, BRM sends a demand letter on LWA letterhead and collects debt as if it were LWA pursuant to an agreement that allows BRM to act as legal assistants or legal secretaries although

none of the BRM employees are legal assistants or legal secretaries. Money collected using LWA letterhead is sent to LWA by the debtor [Lloyd], on a check written to LWA, but LWA's bookkeeper forwards those checks to BRM and BRM has an agreement with its bank that allows it to deposit those checks into BRM's account. BRM does not pay LWA for money collected using LWA's name and resources. And BRM's employees report to Lloyd and Lloyd makes operational decisions for BRM.

Plaintiff's Brief at 15-17 (footnotes and record citations omitted).

Notably, virtually all of the Plaintiff's arguments (as well as the underlying citations to the summary judgment record) revolve around the interaction of BRM and LWA. LWA, however, is not a defendant to this Adversary Proceeding and, even if LWA were a defendant, there is no count within the Complaint seeking a finding that LWA is Lloyd's alter ego (assuming such a claim could survive summary judgment) or that LWA should be substantively consolidated into Lloyd's bankruptcy estate. Thus, even if this Court found the allegations in Plaintiff's Brief fully supported by the summary judgment record, which they are not,[32] the Plaintiff has still failed to raise a genuine issue of material fact regarding the requested substantive consolidation of BRM into Lloyd's bankruptcy estate.

For these reasons, the Court concludes that the Plaintiff failed to raise a genuine issue of material fact regarding the elements of his Count VIII claim against BRM and that summary judgment must be granted in the Movants' favor.

Before concluding its analysis of Count VIII, however, additional concerns merit comment and emphasis. Here, the Plaintiff is attempting to use substantive consolidation in an unusual way. Normally, substantive consolidation arises in connection with multiple, affiliated debtor entities.

---

[32] In support of the allegations that BRM's employees reported to Lloyd and Lloyd made operational decisions for BRM, the Plaintiff cites to Amanda's deposition taken May 30, 2016. A review of the designated portions of the transcript highlight the interaction between LWA and BRM, but does not raise a genuine issue of material fact as to whether Lloyd controlled BRM. *See* Plaintiff's App. 962-948 (May 30, 2016 Deposition of Amanda at 27:11-49:4). Instead, Amanda testified that Lloyd was not involved in BRM's management. *Id.* at 966 (41:23-25).

**MEMORANDUM OPINION AND ORDER**                                                                    **40**

Here, however, the Plaintiff seeks to substantively consolidate two non-debtor entities into Lloyd's bankruptcy estate.

As previously explained, the Fifth Circuit considers substantive consolidation an "extreme and unusual remedy" that is to be used sparingly and with great caution—warnings that arose in the context of the more usual requests to substantively consolidate affiliated debtor-entities. In the case of affiliated debtor entities, the bankruptcy court has jurisdiction over all relevant parties—*i.e*., the entities to be substantively consolidated and the entities' creditors—and can ensure that adequate notice and an opportunity to be heard is given. Here, the Court is being asked to substantively consolidate two non-debtor entities that it knows virtually nothing about[33] into Lloyd's bankruptcy estate. Although the parties agree that GPC's primary assets are the Condominium and the Preston Creek Property, there is nothing in the record regarding BMR's assets. Further, the Court knows nothing about GPC's and BRM's creditors who, upon consolidation, would be forced to share their respective entities' assets with Lloyd's creditors. Given the relatively few assets in Lloyd's bankruptcy estate, this may be a burden, not a benefit, to them. If such creditors exist, there is nothing in the record indicating that they received notice of this Adversary Proceeding and the Plaintiff's request for substantive consolidation of their entity with Lloyd's bankruptcy estate. This is particularly troubling since the Court is to consider whether consolidation will benefit *all* creditors, not just Lloyd's creditors. There is absolutely nothing in the summary judgment record that would permit this Court to make that determination.

Notably, of the handful of courts addressing substantive consolidation of non-debtor entities into debtor entities, many have specifically required (or noted the requirement of) notice

---

[33] In the case of affiliated debtor entities, the Court will have schedules and statements of financial affairs on file that must identify (1) assets, (2) liabilities, (3) the extent of overlapping creditors, and (4) how hopelessly intertwined the entities are, among other things.

to *all* affected creditors.[34]  While these concerns are not driving the Court's decision here, as the Count VIII claim fails for other reasons, the Court wanted to identify these additional issues because of the unusual relief being requested here.

## VI.    CONCLUSION

Based upon the summary judgment record, the Court concludes that:

a.  Under Texas law, reverse piecing of the corporate veil is a remedy and not an independent cause of action.  Because the Complaint does not contain a count that would support recovery under a reverse-piercing theory, and because the Plaintiff does not hold a judgment against any of the Defendants that would support a recovery under a reverse-piercing theory, Counts I and II fail as a matter of law.  *See* § V.A, *supra.*[35]

b.  Under Texas law, constructive trust is a remedy and not an independent cause of action.  Because the Complaint does not contain a count that would support the imposition of a constructive trust, Count III fails as a matter of law.  Further, the Plaintiff failed to raise a genuine issue of material fact as to each element necessary for the imposition of a constructive trust.  Specifically, the summary judgment record does not contain sufficient evidence to permit this Court to infer that there was a fraud or breach of fiduciary duty in relation to the purchase, maintenance, or improvement of GPC's assets.  In fact, the Complaint is devoid of any allegation of such fraud or breach of fiduciary duty.  *See* § V.B, *supra.*

c.  The Plaintiff failed to raise a genuine issue of material fact regarding the elements of his Count VIII claim, and Count VIII fails as a matter of law.  Further, because Counts VI and VII are dependent upon the Count VIII substantive consolidation claim, they also fail as a matter of law.  *See* § V.C-D, *supra.*

Thus, for the reasons previously explained in this Memorandum Opinion and Order, the Court concludes that the Motion for Summary Judgment must be granted in its entirety, which fully disposes of the Complaint in this Adversary Proceeding.

---

[34] *See e.g., Soneet v. S & G Fin. Serv. of S. Fla., Inc. (In re S & G Fin. Serv. of S. Fla., Inc.)*, 451 B.R. 573, 585 (Bankr. S.D. Fla. 2011) (citing cases);  *In re E'Lite Eyewear Holding, Inc.* 2009 WL 349832, at * 2 (Bankr. E.D. Tex. 2009) (ordering consolidation of debtor and non-debtor entities after finding that adequate notice of the motion had been provided to all known creditors of the various entities and that no objections were received); *In re Lease-A-Fleet, Inc.*, 141 B.R. 869, 873 (Bankr. E.D. Pa. 1992) (requiring notice be given to all creditors of the non-debtor corporations).

[35] As previously explained, although Lloyd did not move for summary judgment in this Adversary Proceeding, both GPC and BRM did.  And, because the Court grants GPC's and BRM's requests for summary judgment on Count II, Lloyd is the sole remaining defendant subject to that count.  Because an alter ego claim may not stand without the existence of an alleged alter ego, Count II also fails as to Lloyd as a matter of law.

SO ORDERED.

A take nothing judgment will be entered separately.

### # # # END OF MEMORANDUM OPINION AND ORDER # # #